UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>VILASINI GANESH and<br>GREGORY BELCHER,<br><br>       Defendants. | Case No. 16-CR-00211-LHK<br><br>**ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL**<br><br>Re: Dkt. No. 338 |

      Before the Court is Defendant Gregory Belcher's Motion for Judgment of Acquittal and/or New Trial. ECF No. 338 ("Mot."). The government opposes Belcher's motion. ECF No. 340 ("Opp."). Having considered the submissions of the parties, the record in the case, and the relevant law, the Court hereby DENIES Belcher's motion.

## I.    BACKGROUND

      On May 19, 2016, a federal grand jury returned an eighteen-count Indictment against Belcher, an orthopedic surgeon, and Vilasini Ganesh, a general practitioner. *See* ECF No. 1. Generally, the Indictment alleged that Belcher and Ganesh "participated in a scheme to defraud health care benefit programs" by submitting "false and fraudulent claims" for reimbursement to

1

health insurers and "diverting proceeds of the fraud for their personal use." *Id.* ¶¶ 21–22. The Indictment charged Belcher and Ganesh with one count of health care fraud conspiracy in violation of 18 U.S.C. § 1349, *id.* ¶¶ 30–31, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), *id.* ¶¶ 36–37, and six counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. *Id.* ¶¶ 38–39. Beyond that, the Indictment charged Ganesh with five counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2, *id.* ¶¶ 32–33, and five counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035. *Id.* ¶¶ 34–35.

Subsequently, on July 13, 2017, the government filed a twenty-four count Superseding Indictment against Belcher and Ganesh. ECF No. 52. The Superseding Indictment included all the counts charged in the Indictment and added six counts against Belcher. Specifically, like the Indictment, the Superseding Indictment charged Belcher and Ganesh with one count of health care fraud conspiracy in violation of 18 U.S.C. § 1349 (Count 1), *id.* ¶¶ 32–33, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 18), *id.* ¶¶ 38–39, and six counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Counts 19–24). *Id.* ¶¶ 40–41. Further, like the Indictment, the Superseding Indictment charged Ganesh with five counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 2–6), *id.* ¶¶ 34–35, and five counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035 (Counts 11–15). *Id.* ¶¶ 36–37. However, unlike the Indictment, the Superseding Indictment also charged Belcher with four counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 7–10), *id.* ¶¶ 34–35, and two counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035 (Counts 16–17). *Id.* ¶¶ 36–37.

As relevant to the instant motion, one of the two counts charged against Belcher under § 1035—Count 16—identified a claim for reimbursement that Belcher submitted to Cigna on or about November 26, 2013. *Id.* at 12. Count 16 charged that the November 26, 2013 claim was a false statement because it inaccurately represented the date on which a certain patient, M.H.,

received physical therapy from Belcher's medical practice. *See id.*; ECF No. 300 at 6. Further, Count 16 charged that the November 26, 2013 claim constituted a materially false statement, and that Belcher knowingly and willfully submitted the materially false statement to Cigna. ECF No. 52 ¶ 37.

On December 14, 2016, after a 14-day jury trial, the jury convicted Belcher on Count 16, but acquitted him of 8 counts, specifically Counts 1, 7–10, and 17–24. *See* ECF No. 300. Subsequently, on January 19, 2018, Belcher filed the instant Motion for Judgment of Acquittal and/or New Trial. *See* Mot. The government opposed Belcher's motion on February 2, 2018. *See* Opp.

## II.    LEGAL STANDARD

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 allows a criminal defendant to move for a judgment of acquittal on the grounds of insufficient evidence after the entry of a guilty verdict. Under Rule 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In deciding a Rule 29 motion, "[t]he district court . . . must bear in mind that it is the jury's exclusive function to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Bernhardt*, 840 F.2d 1441, 1448 (9th Cir. 1988). Additionally, a district court may find that "circumstantial evidence and inferences drawn from it" are sufficient to sustain a conviction. *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992), *as amended* (June 15, 1992).

### B. Motion for a New Trial

Federal Rule of Criminal Procedure 33 allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The burden of justifying a new trial rests with the defendant. *See United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986).

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

The decision to grant a new trial is within the sound discretion of the trial court. *See United States v. Love*, 535 F.2d 1152, 1157 (9th Cir. 1976), *cert. denied*, 429 U.S. 847 (1976).

## III.   DISCUSSION

As explained above, Belcher has moved for both judgment of acquittal and a new trial. *See* Mot. The Court first considers Belcher's motion for judgment of acquittal. The Court then considers Belcher's motion for a new trial.

### A. Belcher's Motion for Judgment of Acquittal

As relevant here, 18 U.S.C. § 1035 imposes either a fine or a term of imprisonment "not more than 5 years," or both, on anyone who "knowingly and willfully . . . makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry[] in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1035(a)(2). Thus, the Court instructed the jury that in order for Belcher to be found guilty of making false statements relating to health care matters in violation of § 1035, the government had to prove each of the following elements beyond a reasonable doubt:

> First, that the defendant made or used a materially false writing or document;
>
> Second, that the defendant knew the materially false writing or document contained a materially false, fictitious, or fraudulent statement or entry;
>
> Third, in connection with the delivery of or payment for health care benefits, items, or services involving a health care benefit program; and
>
> Fourth, that the defendant did so knowingly and willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful.

ECF No. 280 at 33.

As explained above, the jury found Belcher guilty on Count 16, which charged Belcher with violating § 1035 by submitting a false claim for reimbursement to Cigna on or about November 26, 2013. Specifically, Count 16 charged that the November 26, 2013 claim was false

4

because it inaccurately represented the date on which patient M.H. received physical therapy from Belcher's medical practice. *See* ECF No. 52 at 12; ECF No. 300 at 6. As both Belcher and the government recognize, the evidence produced at trial established that although the November 26, 2013 claim stated that M.H. received a physical therapy session from Belcher's medical practice on Saturday, November 23, 2013, M.H. actually received that session on Monday, November 25, 2013. *See* Mot. at 7; Opp. at 4–5, 17.

Belcher argues that the Court should enter a judgment of acquittal under Rule 29 because the evidence that the government presented was insufficient to sustain a guilty verdict as to Count 16. Specifically, Belcher argues that the evidence was insufficient to show either (1) that "Belcher's false statement was 'material'"; or (2) that Belcher "acted 'willfully.'" Mot. at 5. The Court addresses Belcher's materiality and willfulness arguments in turn.

### 1. Materiality

Under 18 U.S.C. § 1035, in order for a false statement to be material, it must have "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (internal quotations omitted and alteration adopted) (defining materiality for purposes of 18 U.S.C. § 1001). Again, the false statement charged in Count 16 was Belcher's representation to Cigna that M.H. received physical therapy from Belcher's medical practice on November 23, 2013, when that therapy was actually provided to M.H. on November 25, 2013. Belcher included this false statement in the November 26, 2013 claim for reimbursement that he submitted to Cigna. Thus, in order to satisfy the materiality requirement for Count 16, the government was required to prove that Belcher's misrepresentation of the date on which M.H. received the physical therapy treatment had "a natural tendency to influence" or was "capable of influencing" Cigna's decision whether to pay Belcher's claim for reimbursement. *Gaudin*, 515 U.S. at 509.

Belcher argues that the government failed to offer sufficient evidence to prove materiality for Count 16. *See* Mot. at 11–18. Specifically, although Belcher concedes that the November 26,

2013 claim was "inaccurate" because the actual date on which M.H. received the physical therapy was November 25, 2013, and not November 23, 2013, *id.* at 17, Belcher asserts that "[t]here is no evidence whatsoever that Cigna would have processed [the November 26, 2013] claim any differently—and no evidence that [Cigna] would not have paid [the November 26, 2013 claim]—if [Cigna] had received a claim with the correct date of November 25 instead of November 23." *Id.* at 12.

However, contrary to Belcher's position, the Court finds that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that Belcher's misrepresentation in the November 26, 2013 claim was material. Most significantly, Tammy Kahler, a Cigna employee who was a member of the unit at Cigna that reviewed potentially false claims, testified that Cigna would not pay a claim that inaccurately identified the date of service if Cigna knew about the inaccuracy—even if the inaccuracy was seemingly minor. Specifically, during her direct examination, Ms. Kahler stated the following:

> Q: If Cigna received a claim that sought payment from Cigna for a patient receiving care on a particular date, would it pay that claim if Cigna knew that the patient was not actually seen on the date that was claimed in the submission?
>
> A: Not knowingly, no, we would not.
>
> Q: And why wouldn't you pay that claim?
>
> A: Because it was misrepresented.
>
> Q: Would it matter if it were just a day or two off? So, for example, the patient were actually seen on a Monday and, oh, you know, I got off a couple days, oh, it's Wednesday, whatever. Can you please, you know, pay anyway? I mean, would it matter to you if the date were a day or two off?
>
> A: It absolutely would.

ECF No. 340-1, Nov. 20, 2017 Transcript at 181–82. In other words, according to Ms. Kahler, a claim's misrepresentation of the date of service by a couple of days "absolutely would" affect Cigna's decision whether to pay that claim.

Further, other testimony that was given at trial pointed to various reasons for why the dates

6

of service listed in a provider's claim would matter to Cigna and other insurers. For example, Ms. Kahler testified that submitting a claim listing two physical therapy "sessions on one date as opposed to" two dates could affect the amount of reimbursement paid by Cigna for those sessions. ECF No. 352, Nov. 20, 2017 Transcript at 185.

Similarly, Alex Kondratenko, a senior investigator for Blue Shield of California, testified that (1) Blue Shield had a "cascading tiered reimbursement policy for physical therapy"; (2) under that policy, if a provider submits a claim that bills for multiple procedures on the same date of service, "the procedure with the highest value" is reimbursed "at 100 percent of the allowed amount," while the "second procedure or . . . unit of service" is reimbursed "at 80 percent of the allowed amount," and the third procedure will be reimbursed "at 40 percent of the allowed amount"; and therefore (3) "if a provider had a couple of sessions on one day and then inaccurately told [Blue Shield] it was on separate days, [the provider would] actually be able, under that scenario, to claim a higher reimbursement." ECF No. 354, Nov. 21, 2017 Transcript at 20–21.

Further, Kathy Richer, a supervisor in Aetna's special investigations unit, testified that it is important for providers to list the correct dates of service when submitting claims because "people change their policies from time to time," the terms of those policies change, and "sometimes[] peoples deductibles haven't been hit until a certain point." ECF No. 351, Nov. 20, 2017 Transcript at 59–60. Similarly, Julia Haskins, a senior investigator for Anthem Blue Cross, testified that "if the date [of service] isn't correct, it could also affect benefits, [and] there could be an issue regarding eligibility." ECF No. 355, Nov. 21, 2017 Transcript at 74.

Relatedly, there was also testimony indicating that the dates of service that Belcher listed on his claims may have impacted whether and what insurers paid for Belcher's claims, which underscores why dates of service are material to insurers when reviewing claims. As explained above, according to Ms. Kahler and Mr. Kondratenko, Belcher might have been able to increase the reimbursement he received from insurers by claiming that the services his medical practice

7

provided on one day were actually provided on two different days. *See* ECF No. 352, Nov. 20, 2017 Transcript at 185 (Kahler testimony); ECF No. 354, Nov. 21, 2017 Transcript at 20–21 (Kondratenko testimony). For example, according to Belcher's cross-examination testimony, patient M.H. was scheduled on numerous occasions throughout 2012, 2013, and 2014 to receive massage therapy and physical therapy from Belcher's medical practice on the same day. ECF No. 340-1, Dec. 8, 2017 Transcript at 34–43.

However, there was a considerable amount of testimony at trial indicating that, in contrast to physical therapy, massage therapy—at least when given by a massage therapist—is not typically covered by insurance. For instance, Ms. Kahler of Cigna testified that "massage therapy typically isn't covered in most of our benefits, so we'll typically deny it because it's just not a covered benefit." ECF No. 352, Nov. 20, 2017 Transcript at 181. Similarly, Jacob Kearney, a manager of the special investigative unit of United Health Group, testified that the code corresponding to a massage therapist rendering massage therapy "is often a non-covered benefit for the vast majority of plans, so it would not—it would not pay." ECF No. 351, Nov. 20, 2017 Transcript at 160–61.

Further, Mr. Kondratenko of Blue Shield of California testified that "[m]assage therapy is a benefit only if it was performed by a doctor of medicine or under the direction of a doctor of medicine and was performed by a licensed physical therapist or a certified occupational therapist. We will never cover massage therapy when it was performed by a massage therapist." ECF No. 354, Nov. 21, 2017 Transcript at 17. Moreover, fellow orthopedic surgeon Sanaz Hariri, who is Belcher's mentee and officemate, testified during her direct examination by defense counsel that massage therapy is usually not covered by insurance, and that when she recommends a massage therapist to a patient, she says it is out of pocket. Nov. 28, 2017 Transcript at 103–04.

This evidence suggests that when M.H. would receive physical therapy and massage therapy from Belcher's medical practice on the same day, Belcher had a financial motive to bill the massage therapy session as a second physical therapy session. However, because two physical

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

therapy sessions in one day for one patient would look unusual, and because Belcher stood to gain financially by listing a different date of service for one of the two physical therapy sessions, *see* ECF No. 352, Nov. 20, 2017 Transcript at 185 (Kahler testimony), the evidence shows how Belcher's claimed dates of service may have impacted insurers' reimbursements of Belcher's claims. This underscores why dates of service are material to insurers when reviewing claims.

In light of all this testimony, the Court finds that there was enough evidence for a jury to conclude beyond a reasonable doubt that the false statement in Belcher's November 26, 2013 claim had "a natural tendency to influence" or was "capable of influencing" Cigna's decision whether to pay the claim. *Gaudin*, 515 U.S. at 509.

Belcher argues that there was insufficient evidence of materiality by asserting that Cigna was contractually obligated to reimburse Belcher for "any covered and medically necessary services actually provided to" M.H., and that the inaccurate date of service in the November 26, 2013 claim "does not remove or alter that legal obligation." Mot. at 13. Put another way, Belcher argues that the inaccurate date of service was immaterial because Cigna would have been obligated to pay the claim even if Cigna knew that the claim contained an inaccurate date of service. However, even assuming that the services M.H. received from Belcher's medical practice were "medically necessary," Belcher's motion points to no evidence that suggests that Cigna was contractually obligated to pay claims for medically necessary services *even if those claims were inaccurate*. On the other hand, Ms. Kahler's testimony indicates that Cigna would not—and had no legal obligation to—pay claims for medically necessary services if those claims were inaccurate. As a result, Belcher's contractual obligation argument is unavailing.

Belcher also argues that the Ninth Circuit's decision in *United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010), shows that "'materiality' under § 1035 requires some intended or actual injury" because otherwise § 1035 would be "constitutionally overbroad." Mot. at 15. Belcher then asserts that he is entitled to judgment of acquittal because "the evidence was legally insufficient to prove" some "intended or actual injury" stemming from Belcher's false claim

United States District Court
Northern District of California

"beyond a reasonable doubt." *Id.*

Belcher's *Alvarez*-based argument that the materiality element of § 1035 must require actual harm is not well-taken. In *Alvarez*, the Ninth Circuit addressed the constitutionality of the Stolen Valor Act, which prohibited any individual from falsely representing that he or she received a medal or decoration from the Armed Forces. 617 F.3d at 1202. In holding that the Stolen Valor Act was facially invalid under the First Amendment, the Ninth Circuit contrasted the Act with fraud statutes like § 1035 and explained that fraud statutes are constitutionally valid because they criminalize speech "beyond mere falsity." *Id.* at 1211. Because *Alvarez* addressed the constitutionality of the Stolen Valor Act and did not concern any fraud statutes, its discussion of fraud statutes is not binding. More importantly, it is clear that § 1035's materiality requirement ensures that § 1035 targets speech "beyond mere falsity." *Id.* As explained above, under § 1035, a false statement must have "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed" in order to be material. *Gaudin*, 515 U.S. at 509. Thus, in the instant case, § 1035's materiality requirement required the jury to find that the inaccurate date of service had "a natural tendency to influence" or was "capable of influencing" Cigna's decision to pay Belcher's claim. *Id.* As a result, even after taking *Alvarez* into consideration, the Court finds that § 1035's materiality requirement, when combined with the other essential elements of § 1035, immunizes § 1035 from any constitutional concerns.

Moreover, the Court notes that Belcher would not be entitled to judgment of acquittal under Rule 29 even if actual harm was a constitutionally required element of § 1035. As explained above, there was sufficient evidence for a jury to find beyond a reasonable doubt that Cigna would not have paid Belcher's November 26, 2013 claim had Cigna known of the inaccurate date or service. Thus, by extension, there was also sufficient evidence to show that Belcher's inaccurate statement caused actual harm to Cigna—specifically, by causing Cigna to pay a claim that it would not have otherwise paid.

Accordingly, the Court concludes that there was sufficient evidence for a reasonable jury

United States District Court
Northern District of California

to find that Belcher's false statement in his November 26, 2013 claim was material.

### 2. Willfulness

For purposes of 18 U.S.C. § 1035, in order for a person to make a false statement "willfully," that person must make the false statement "with bad purpose and with knowledge that the conduct is unlawful." ECF No. 280 at 18; *see Bryan v. United States*, 524 U.S. 184, 191–92 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994))).

Belcher argues that there was insufficient evidence at trial to show either that Belcher had "precise knowledge of the statute prohibiting" him from listing an inaccurate date of service in his November 26, 2013 claim, or that Belcher had "general knowledge of the illegality of" that conduct. Mot. at 18. The Court is not persuaded. First, on December 1, 2017, Belcher stated the following:

> Q: Let's start with this. You would agree it's improper to bill an insurance company for—that asserts care was provided on a day when there was no care provided that day? You would agree that's improper?
>
> A: Yes. Yes.

ECF No. 340-1, Dec. 1, 2017 Transcript at 219. During this portion of Belcher's cross-examination, Belcher also explained that he was taught to bill two treatments for the same patient on the same day as two treatments on two different days, and that he subsequently learned that this billing practice was "wrong" "somewhere in 2013." ECF No. 340-1, Dec. 1, 2017 Transcript at 218. Thus, Belcher's testimony suggests that Belcher knew that it was unlawful to misrepresent the date of service when he submitted his November 26, 2013 claim to Cigna.

Second, Belcher submitted claims to insurers using HCFA 1500 forms, ECF No. 340-1, Nov. 20, 2017 Transcript at 173, and every HCFA 1500 form (1) requires the submitting health care provider to attest that the information on the form is accurate; and (2) warns that "any person

11

who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties." *Id.* at 174. Therefore, the fact that Belcher submitted an inaccurate claim and attested to the claim's accuracy despite this warning also supports the jury's finding that Belcher knew it was unlawful for him to list an inaccurate date of service on his November 26, 2013 claim. *See United States v. Awad*, 551 F.3d 930, 940 (9th Cir. 2009) (stating that a defendant's submission of false claims to Medicare despite a warning on the claim form that "any false, incomplete or misleading information" could subject the defendant to criminal liability was evidence that the defendant "knew that he was committing an unlawful act that exposed him to criminal liability").

Third, as the government points out, there was evidence submitted at trial that Belcher took certain actions that could be construed as efforts to conceal inaccurate claims for reimbursement for physical therapy services. *See* Opp. at 13. For example, Belcher testified that although he collected co-pays from his surgical patients, he did not collect co-pays from his physical therapy or massage therapy patients. ECF No. 340-1, Dec. 1, 2017 Transcript at 171. Further, according to Abigail Cabral, who was employed as Belcher's physical therapist, Belcher did not require her to chart or document patient visits in medical files. ECF No. 345, Nov. 6, 2017 Transcript at 167–169. The jury could have perceived these actions as efforts to conceal false claims, and thus could have inferred from this evidence that Belcher knew that the misrepresentation in the November 26, 2013 claim was unlawful. *See United States v. Dearing*, 504 F.3d 897, 902 (9th Cir. 2007) (stating that "willfulness may be inferred from circumstantial evidence of fraudulent intent," including "'efforts to conceal the unlawful activity'" (quoting *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007))).

Fourth and finally, there was evidence to suggest that listing inaccurate service dates might have been in Belcher's financial interest. As explained above, testimony from several employees of insurers indicated that Belcher stood to receive more reimbursement from insurers by claiming

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

that his medical practice provided services to a patient on two different days instead of truthfully stating that those services were all provided on one day. *See* ECF No. 352, Nov. 20, 2017 Transcript at 185 (Kahler testimony); EF No. 354, Nov. 21, 2017 Transcript at 20–21 (Kondratenko testimony). For instance, there was evidence that (1) M.H. was frequently scheduled to receive massage therapy and physical therapy from Belcher's medical practice on the same day, ECF No. 340-1, Dec. 8, 2017 Transcript at 34–43; (2) massage therapy from a massage therapist is usually not covered by insurance, *see* ECF No. 351, Nov. 20, 2017 Transcript at 160–61; ECF No. 352, Nov. 20, 2017 Transcript at 181; ECF No. 354, Nov. 21, 2017 Transcript at 17, Nov. 28, 2017 Transcript at 103–04, and therefore (3) when M.H. received physical therapy and massage therapy from Belcher's medical practice on the same day, Belcher had an incentive to bill the massage therapy session as a second physical therapy session. However, because testimony from the insurers indicated that Belcher could secure more reimbursement by claiming that the "second" physical therapy session—which was actually a massage session—occurred on a different day than the first physical therapy session, *see* ECF No. 352, Nov. 20, 2017 Transcript at 185 (Kahler testimony), the evidence suggests that Belcher had a financial motive for claiming that M.H. received a physical therapy session on November 23, 2013 when in fact she received that session on November 25, 2013. Although evidence of motive on the part of Belcher to misrepresent the date of service is not direct evidence that Belcher knew that such misrepresentation was unlawful, it is circumstantial evidence and also suggests that Belcher had something to gain from listing inaccurate dates of service even if he knew that it was unlawful.

In light of the foregoing evidence, the Court finds that there was sufficient evidence from which a reasonable jury could conclude that Belcher willfully misrepresented the date of service in his November 26, 2013 claim for reimbursement. Although Belcher testified on December 8, 2017 that he did not think it was improper to list the wrong service date in the claims he submitted to insurers, *see* ECF No. 338-5, Dec. 8, 2017 Transcript at 8–9, the jury was entitled to (and apparently did) discredit Belcher's testimony, especially in light of the testimony he gave a week

earlier in which he (1) recounted that he learned "somewhere in 2013" that it was "wrong" to bill two treatments done on the same day as two treatments done on two separate days; and (2) expressly agreed with the prosecutor's contention that "it's improper to [submit a claim] that asserts care was provided on a day when there was no care provided that day" ECF No. 340-1, Dec. 1, 2017 Transcript at 218–19.

Belcher attempts to salvage his willfulness argument by asserting that "[t]he government admitted during trial that when Dr. Belcher submitted different dates of service, he did not believe his actions were unlawful." Mot. at 20. In support of this assertion, Belcher points to a statement that one of the prosecutors made in the midst of the following portion of Belcher's cross-examination:

> Q: Okay. I want to know, did you bill, in 2012 and 2013 and 2014, when a patient was seen twice in one day, you would agree with me, you would split that and have the bill reflect as if they were seen on two days. Didn't you do that?
>
> A: Let's –
>
> Q: Yes or no?
>
> A: I can't specifically for each patient. I mean, I can't tell you for which patients I did and which I didn't.
>
> Q: I can give you some examples. You'd agree with me it happened with Ms. Michael?
>
> A: It's fine.
>
> Q: Do you want to go back and look at that?
>
> A: I didn't think it was a problem.
>
> Q: *Okay. I agree with you, you didn't think it was a problem.*
> What I want to know is whether or not you agree with me, you did that for years? In 2012, you saw the examples with Ms. Michael. In 2013, you saw the examples with Ms. Michael.
> You did it with Ms. Habibi, correct, all through '12, '13, '14? Do you want to look at the examples? Or would you agree with me that you did it in those years?

ECF No. 338-5 at 10–11 (emphasis added). Belcher argues that because the prosecutor "agreed"

14

1   with Belcher that Belcher "didn't think it was a problem" to list a date of service that was different

2   from the actual date of service, no reasonable juror could find that Belcher's conduct was

3   "willful." Mot. at 21.

4          Belcher's argument is unavailing. First, as reflected in the final jury instructions,

5   "[q]uestions, statements, objections, and arguments by the lawyers are not evidence." ECF No.

6   280 at 7. Thus, the jury was prohibited from affording any evidentiary weight to the prosecutor's

7   purported "agreement." Second, the Court agrees with the government's contention that when

8   examined in context, the prosecutor's "agreement" "was merely an inadvertent preface to a

9   question the defendant refused to directly answer." Opp. at 16. Because willfulness was an

10  essential element underlying the government's case against Belcher, the government consistently

11  and repeatedly argued before and during trial (as it does now) that Belcher knew that it was

12  improper to submit inaccurate claims to insurers, and Belcher points to no other instance in which

13  the government can be said to have conceded that the willfulness element was not met. Further, it

14  is clear from the portion of Belcher's cross-examination excerpted above that the prosecutor's

15  primary intent was to ask Belcher whether he had misrepresented service dates on various claims

16  from 2012 to 2014. As a result, even if the prosecutor's purported "agreement" could be afforded

17  evidentiary weight, the Court finds that the prosecutor's statement was inadvertent and therefore

18  not a binding "clear and unambiguous admission of fact." *United States v. Blood*, 806 F.2d 1218,

19  1221 (4th Cir. 1986); *see also* Mot. at 21 (citing *Blood*).

20         Belcher also argues that "[g]iven that Counts 7, 8, [and] 16 all deal with the same conduct,

21  same insurer, and same patient-beneficiary, the fact that the jury acquitted Dr. Belcher of Counts 7

22  and 8 . . . is a strong indication" that the jury believed Belcher when he testified that he "didn't

23  think it was a problem" to list inaccurate service dates on his claims. Mot. at 23. Belcher appears

24  to assert that because of this indication that the jury credited Belcher's willfulness testimony for

25  purposes of Counts 7 and 8, there is insufficient evidence to support the jury's willfulness finding

26  on Count 16. *See id.* As an initial matter, the Court notes that, contrary to Belcher's argument,

27

28

15

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
TRIAL

Counts 7 and 8 do not "deal with the same conduct" as Count 16. Specifically, Counts 7 and 8 charged Belcher with committing health care fraud in violation of 18 U.S.C. §§ 1347 and 2 based on two *other* claims that Belcher submitted to Cigna—one on October 18, 2012, and the other on June 27, 2013. ECF No. 52 at 11. Neither Count 7 nor Count 8 implicates the November 26, 2013 claim on which Count 16 is based.

Further, and more importantly, Belcher's argument runs headlong into the well-established rule that the Court's review of the sufficiency of the evidence on one count "should be independent of the jury's determination that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67 (1984); *see also United States v. Acosta*, 17 F.3d 538, 545 (2d Cir. 1994) ("The review of the legal sufficiency of the evidence with respect to one count should be independent of the jury's determination that the evidence on another account was insufficient to meet the government's burden of persuasion."). Indeed, the Court instructed the jury that "[y]our verdict on any count as to any defendant should not control your verdict on any other count or as to any other defendant." ECF No. 278 at 11 (citing *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit*, § 3.13 (2010 ed.)). Correspondingly, "a criminal defendant convicted by a jury on one count" cannot "attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *Powell*, 469 U.S. at 58. Because Belcher's argument amounts to such an attack, the Court finds that Belcher cannot use the argument to demonstrate that he is entitled to judgment of acquittal.

For these reasons, the Court finds that there was sufficient evidence for a reasonable jury to find that Belcher willfully misrepresented the date of service in his November 26, 2013 claim. Accordingly, the Court DENIES Belcher's motion for judgment of acquittal.

### B. Belcher's Motion for a New Trial

Belcher argues that he is entitled to a new trial on three grounds. First, Belcher reasserts all the arguments that he raises in his motion for judgment of acquittal. Mot. at 27. Second, Belcher argues that the Court should grant a new trial on Count 16 "because the instructions for §

16

1035 was too ambiguous to guide the jury in adjudicating the offense." *Id.* Third, Belcher contends that he is entitled to a new trial because the admission of spreadsheets reflecting insurer data regarding claims submitted to the insurers by Belcher violated Belcher's Confrontation Clause rights under the Sixth Amendment. *Id.* at 28. The Court addresses each argument in turn.

### 1. Reasserted Arguments

First, Belcher argues that the Court should grant him a new trial because, for the reasons described in Belcher's motion for judgment of acquittal, the weight of the evidence militates against the jury's finding that Belcher's false statement in his November 26, 2013 claim was either "material" or made "willfully." *See* Mot. at 27. When a defendant moves for a new trial based on the weight of the evidence, a court may grant the defendant a new trial if it "'concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred.'" *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). In other words, a motion for a new trial based on the weight of the evidence may be granted "in exceptional circumstances in which the evidence weighs heavily against the verdict." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012). In the Court's discussion of Belcher's motion for judgment of acquittal above, the Court explained why there was sufficient evidence to support Belcher's conviction on Count 16. For those same reasons, the Court finds that the instant case does not present one of the "exceptional circumstances" in which the evidence weighs so "heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* at 1153; *Alston*, 974 F.2d at 1210. As a result, the Court concludes that Belcher is not entitled to a new trial based on his arguments regarding the weight of the evidence.

### 2. Section 1035 Jury Instructions

Next, Belcher argues that he is entitled to a new trial because Jury Instruction No. 1035, which set forth the elements of making a false statement relating to health care matters in violation

of 18 U.S.C. § 1035, *see* ECF No. 280 at 33, contained the term "materially false" but "failed to instruct the jury on how to define 'materiality.'" Mot. at 27. Belcher contends that because the jury "was never instructed as to [the materiality] requirement and cannot be expected to have properly applied it," the Court should vacate Belcher's conviction on Count 16 and grant him a new trial on that count. *Id.*

The Court is not persuaded by Belcher's argument. As an initial matter, the government points out, and Belcher concedes, that Belcher never objected to the jury instructions on these grounds. Opp. at 9; Mot. at 27 n.5. Instead, although Belcher made a series of objections to the final jury instructions proposed by the government and the Court, *see* ECF Nos. 115, 241, 252, 263, & 265, and then filed a statement of non-opposition to the jury instructions stating that he had already made all of his objections, *see* ECF No. 281, none of Belcher's objections were about how materiality was defined for purposes of § 1035.

Moreover, although Jury Instruction No. 1035 did not include a definition for "material," *see* ECF No. 280 at 33, the Court finds that Belcher is not entitled to a new trial based on Jury Instruction No. 1035. The Ninth Circuit has explained that "[i]n reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000). Thus, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* Here, Jury Instruction No. 8.128A, which immediately preceded Jury Instruction No. 1035 and set forth the elements of health care fraud, instructed the jury that:

> A "material fact" is an important fact that a reasonable person would use to decide whether to do or not do something. A fact is "material" if it has the capacity or natural tendency to influence a person's decision. It does not matter whether the decision-maker actually relied on the statement or knew or should have known that the statement was false.

ECF No. 280 at 32. This definition of "material" is virtually identical to the definition of a "material" statement (for purposes of § 1035) as a statement that has "a natural tendency to

United States District Court
Northern District of California

influence, or be capable of influencing, the decision of the decisionmaking body to which it was

addressed." *Gaudin*, 515 U.S. at 509. Because the definition of "material" in Jury Instruction No.

8.128A immediately preceded Jury Instruction No. 1035, and was therefore read to the jury right

before the jury was instructed on the essential elements of § 1035, the Court cannot say that the

absence of a definition for "material" in Jury Instruction No. 1035 deprived the jury of any

fundamental guidance on the elements of § 1035. Instead, when viewing Jury Instruction No.

1035 "in the context of the overall charge" and not "in artificial isolation," the fact that Jury

Instruction No. 1035 lacked a specific definition of "material" did not render the final jury

instructions "as a whole . . . misleading or inadequate to guide the jury's deliberation." *Dixon*,

201 F.3d at 1230.

For these reasons, the Court finds that Belcher's arguments regarding the jury instruction

do not justify granting a new trial.

### 3. Spreadsheets

Finally, Belcher argues that the Court should grant him a new trial because the admission

of certain spreadsheets violated his rights under the Confrontation Clause. Mot. at 28–30. Before

addressing the merits of Belcher's argument, the Court first discusses the relevant procedural

history.

Before trial, the government represented that "[v]arious insurers have provided

spreadsheets pulled from their databases of claims data that document the total (not just charged)

claims submitted by" Defendants Belcher and Ganesh. ECF No. 124 at 3. The government

indicated that it would seek to submit the spreadsheets into evidence as authenticated business

records. *See id.* at 3–7. Belcher objected to the spreadsheets on Confrontation Clause grounds.

*See* ECF NO. 143 at 7–9. Specifically, Belcher argued that the spreadsheets cannot be considered

records kept in the ordinary course of business. Instead, Belcher asserted that because the

spreadsheets were "prepared in response to a grand jury subpoena and were at all times intended

by the government for later use at trial," the spreadsheets were "testimonial statements" that could

19

not be admitted into evidence unless the maker of the spreadsheets appeared at trial and was subject to cross-examination. *Id.* at 8. In overruling Belcher's objection, the Court observed that "the spreadsheets are composed of entries from databases of claims submissions kept by various health insurers, and thus the entries themselves are business records." ECF No. 149 at 5. Accordingly, the Court concluded that "even if the spreadsheets were intended by the government for use at trial, the spreadsheets are merely compilations of business records and therefore are admissible absent confrontation." *Id.* Subsequently, at trial, the spreadsheets were admitted into evidence over Belcher's objection. *See* Mot. at 28–29.

In the instant motion, Belcher once again renews his argument that the spreadsheets are testimonial statements. Belcher points to the United States Supreme Court's remark that testimonial statements include "pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (internal quotation marks omitted). Based on this, Belcher argues that the spreadsheets are "undeniably" testimonial statements because "they were specifically prepared in response to grand jury subpoenas [in] anticipation of litigation." Mot. at 29.

The Court remains unconvinced by Belcher's argument. The spreadsheets are composed exclusively of data entries that were pulled from the claims databases of different insurers, and Belcher recognizes that those data entries, when contained in the insurers' claims databases, amount to records that are "stored as a regularly conducted business activity." *Id.* Thus, as the Court explained before trial, the spreadsheets are merely compilations of business records—they are nothing but compilations of the claims that Belcher and Ganesh submitted to the insurers, as reflected in their claims databases. As a result, the spreadsheets themselves were also admissible as business records.

The Ninth Circuit has provided clear and direct guidance on this issue. Specifically, in *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040 (9th Cir. 2009), the Ninth Circuit explained:

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

We have made clear that for purposes of Rule 803(6), it is immaterial that the
business record is maintained in a computer rather than in company books. A
logical extension on that principle is that evidence that has been compiled from the
computer database is also admissible as a business record, provided it meets the
criteria of Rule 803(6).

*Id.* at 1043 (citations and quotations omitted, emphasis added). Moreover, in the same paragraph, the Ninth Circuit also quoted with approval a passage from Weinstein's Federal Evidence stating that "printouts prepared specifically for litigation from databases that were compiled in the ordinary course of business are admissible as business records to the same extent as if the printouts were, themselves, prepared in the ordinary course of business. The important issue is whether the database, not the printout from the database, was compiled in the ordinary course of business." *Id.* (quoting B. Weinstein and M.A. Berger, *Weinstein's Federal Evidence* § 901.08[1] (2d ed. 2006)). Thus, even though the spreadsheets in the instant case were prepared specifically for litigation, they were nonetheless admissible as business records because they are merely select portions of claims databases that are themselves business records.

Finally, because the spreadsheets were admissible as business records, they are not "testimonial statements" and thus were admissible absent confrontation. *See Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."). As a result, Belcher's Confrontation Clause rights were not violated when the Court admitted the spreadsheets into evidence without requiring the maker of the spreadsheets to appear at trial and be subject to cross-examination. Thus, the Court concludes that Belcher is not entitled to a new trial based on his Confrontation Clause challenge to the spreadsheets. Accordingly, the Court DENIES Belcher's motion for a new trial.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Belcher's Motion for Judgment of Acquittal and/or New Trial.

**IT IS SO ORDERED.**

United States District Court
Northern District of California

Dated: February 15, 2018

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

Case No. 16-CR-00211-LHK
ORDER DENYING DEFENDANT BELCHER'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW
TRIAL