LISA A. RASMUSSEN, ESQ.
NV Bar No. 7491
CA Bar No 207026
Law Office of Lisa Rasmussen
601 South Tenth Street, Suite 100
Las Vegas, NV  89101
Tel. (702) 471-1436
Fax. (702) 489-6619
Email:  Lisa@LRasmussenLaw.com

Attorneys for Gregory Belcher

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR16-0211-LHK |
| Plaintiff, | **DEFENDANT DR. GREGORY BELCHER'S MOTION FOR NEW TRIAL AND FOR AN EVIDENTIARY HEARING** |
| v. | |
| GREGORY BELCHER, | |
| Defendant. | |

Defendant, Gregory Belcher, by and through his counsel, hereby moves this Court to enter an order granting a new trial.  He further requests that this Court hold an evidentiary hearing to determine whether the government's use of evidence completely unrelated to Ganesh and or Belcher throughout the trial was knowing and intentional, extremely reckless, willfully blind or simply negligent.  Any use of unrelated insurance claims that was knowing and intention, or even extremely reckless, will warrant dismissal of the second superseding indictment with prejudice.  It will also warrant other remedies. These are the issues this Court must address in an evidentiary hearing.  Discovery limited to that issue is also requested.

This Motion is made and based upon Rule 33 of the Federal Rules of Criminal Procedure, the Memorandum of Points and Authorities, the papers and pleadings on file in this case and any argument that may be made at a time set for hearing on this Motion.

**<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION                                                                    2

II.  THE LEGAL STANDARDS                                                            3

III.  OVERVIEW OF MEDICAL BILLING PROCEDURES                                        4

IV.  THE SPECIFIC EXHIBITS AND "SOURCE" SPREADSHEETS
     USED IN THIS CASE AND THE ERRORS IN THOSE SPREADSHEETS   6

V.  THE MANNER IN WHICH THE FALSE SPREADSHEETS WERE
    USED BY THE GOVERNMENT AT TRIAL DEMONSTRATES
    SUBSTANTIAL DUE PROCESS VIOLATIONS AND DENIAL
    OF THE RIGHT TO A FAIR TRIAL FOR BOTH DEFENDANTS            11

     a.  The Government Presented the Spreadsheets as Evidence of Fraud
         Throughout the Trial                                                       11

     b.  The Presentation of False Evidence at Trial Violates Due Process
         And the Right to a Fair Trial                                             13

     c.  The Government Has Been on Notice of the Errors Since at Least
         March 9, 2018 and Instead of Addressing the Fact that it Presented
         False Evidence to the Jury as "Evidence of Fraud" in Order to Secure
         Convictions in this Case, the Government Has Doubled Down on its
         Mission to Further Violate Myriad Constitutional Rights of Both
         Defendants                                                                 14

VI.  OTHER UNEXPLAINED ERRORS FROM RANDOM SAMPLINGS
     OF 1500 FORMS                                                                  20

VII.  THE GOVERNMENT FAILED TO DISCLOSE, AND STILL HAS
      NOT DISCLOSED, THE INVESITGATION AND INDICTMENT OF
      ANTHEM SIU INVESTIGATOR                                                       21

VIII.  THE EVIDENCE DESCRIBED HEREIN IS NEWLY DISCOVERED        23

IX.     TRIAL COUNSEL FOR BELCHER WERE INEFFECTIVE BECAUSE
        THEY DID NOT RETAIN AN EXPERT TO REVIEW THE
        GOVERNMENTS SOURCE SPREADSHEETS                                    24

X.      AN EVIDENTIARY HEARING IS NECESSARY, ALONG WITH
        DISCOVERY FOR THIS PURPOSE TO DETERMINE WHETHER
        THE GOVERNMENT'S ACTIONS WERE INTENTIONAL,
        WILLFULLY BLIND, WANTONLY RECKLESS OR SIMPLY
        NEGLIGENT DUE TO A MISUNDERTANDING OF ITS OWN DATA                 26

XI.     CONCLUSION                                                          29

## <u>TABLE OF AUTHORITIES</u>

Brady v. Maryland, 373 U.S. 83 (1963)    4, 22

Carrigan v. Stewart, 132 F.3d 463 (9th Cir. 1997)  22

Farmer v. Brennan, 511 U.S. 825 (1994)  28

Global-Tech Appliances, Inc. v. SEB, S.A.,

  563 U.S. 754 (2011)  28

Kyles v. Whitley, 514 U.S. 419 (1995)  22

McNabb v. U.S., 318 U.S. 332 (1943)  27

Mooney v. Holohan, 294 U.S. 103 (1935)  13

Napue v. Illinois, 360 U.S. 264 (1959)  13

Phillips v. Woodford, 267 F.3d 966 (9th Cir. 2001)  13

Pyle v. Kansas, 317 U.S. 213 (1942)  13

Strickland v. Washington, 466 U.S. 688 (1984)  24

Strickler v. Greene, 527 U.S. 263 (1999)  4, 22

United States v. Agurs, 427 U.S. 97 (1985)  13

United States v. Alston, 974 F.2d 1206 (9th Cir. 1992)  24

United States v. Barrera-Moreno, 951 F.2d 689 (9th Cir. 1991)  27

United States v. Bernal-Restrepo, 930 F.2d 705 (9th Cir. 1991)  27

United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)  4, 27

United States v. Davis, 960 F.2d 820 (9th Cir. 1992)  4

United States v. Doe, 125 F.3d 1249 (9th Cir. 1997)  26

United States v. Endicott, 869 F.2d 452 (9th Cir. 1989)  23

United States v. Jernigan, 492 F.3d 1050 (9th Cir. 2007)  22

United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)  27

United States v. LaPage, 231 F.3d 488 (9th Cir. 2000)  13

United States v. Leung, 351 F.Supp.2d 992 (C.D. Cal 2005)  27

United States v. Ross, 372 F.3d 1097 (9th Cir. 2014)  22, 27

United States v. Walgreen, 885 F.2d 1417 (9th Cir. 1989)  4

United States v. Williams, 112 S.Ct. 1735 (1992)                    27

United States v. Wood, 57 F.3d 733 (9th Cir. 1995)                  23


5th  Am., U.S. Constitution                                         2, 14

6th Am., U.S. Constitution                                          2, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Due process and the right to a fair trial require the government to introduce evidence that is relevant to the controversy at issue.  It does not permit the government to fabricate evidence to "make its case" against a defendant in a federal criminal case.  Fifth and Sixth Amendments to the United States Constitution.

In the trial of this case the government submitted medical insurance claims that were not related to Dr. Belcher or Dr. Ganesh. They were not patients of Dr. Belcher or Dr. Ganesh.  Not only did the government seek admission of these source spreadsheets (over the objection of the defendants), the government used the spreadsheets containing irrelevant data as evidence of crimes committed by the defendants, argued in closing arguments to the jury that the irrelevant spreadsheets were evidence of crimes committed by the defendants thereby encouraging convictions on multiple counts for both defendants, and the government continues to utilize the irrelevant source spreadsheets to compute its "alleged loss amounts" for the purpose of sentencing.

In addition to the government's presentation of literally thousands of completely irrelevant insurance claims, the government also introduced into evidence, argued to the jury and used/is attempting to use spreadsheets containing claims that were never submitted by Dr. Ganesh or Dr. Belcher.  This category of claims are not just the claims lawfully submitted by other providers, these particular claims exist nowhere except on the insurer's source spreadsheets (that are allegedly reliable) and the <u>no not exist in any other database that would have the same information</u> had there been such a claim.  The erroneous evidence in this category appears to have been fabricated.

In addition to these two primary categories of improper and/or fabricated evidence used by the government throughout this case, there are myriad other errors too frequent to detail, but they include things such as inclusion of claims that were lawfully submitted by Dr. Dewees when he worked for KRD (the practice Ganesh purchased) in 2005 and 2006 that were used by the government as examples of illegal conduct by the defendants in this case.   This is a third, category of errors made by the government.

Finally, the government failed to disclose exculpatory materials pursuant to <u>Brady v. Maryland</u> by failing to disclose to the defendants in this case that Gary Jizmejian, a former fraud investigator for Anthem's Special Investigations Unit, was investigated from at least two years prior to the trial in this case and he was indicted in the Central District of California on or about May 20, 2018 for his role in a 20 million fraud scheme against Anthem.   Several "source spreadsheets" in this case came from Anthem's Special Investigation Unit.

Each of these issues warrants a new trial.   Each of these issues were discovered beginning on March 9, 2018 with Ted Cassman's Declaration attached to his Motion for Leave to File a Supplement to Ganesh's Motion for New Trial (which was denied by this Court), through Friday, July 20, 2018.   Additional time with the data would only continue to yield more errors.

An evidentiary hearing is necessary to determine not whether the spreadsheets and government exhibits contain errors- we know they do- but whether the errors were intentionally made by the government in order to prejudice the defendants in this case.


## II.      THE LEGAL STANDARDS

Dr. Belcher is entitled to a new trial pursuant to Federal Rules of Criminal Procedure Rule 33, which permits the court to grant a motion for new trial based on newly discovered evidence. To obtain a new trial based on newly-discovered evidence, a defendant must show that (1) the evidence is newly discovered and was unknown to him at the time of the trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably result in an acquittal; and (4) the failure to learn of the evidence sooner was not the result of a lack of

diligence.  <u>United States v. Davis</u>, 960 F.2d 820, 824-25 (9th Cir. 1992) (quoting <u>United States v.</u>

<u>Walgreen</u>, 885 F.2d 1417, 1428 (9th Cir. 1989).)

Pursuant to <u>Brady v. Maryland</u>, the government has an obligation to provide to the

defense all exculpatory or impeachment evidence within the government's possession.  <u>Brady v.</u>

<u>Maryland</u>, 373 U.S. 83, 87 (1963).  When the government violates this duty, the government

deprives the defendant of due process of law.  Id.  A defendant is entitled to a new trial if (1) the

evidence at issue was favorable to the defense; (2) the government violated its duty and

suppressed the evidence, and (3) the government's violation prejudiced the defendant.   <u>Strickler</u>

<u>v. Greene</u>, 527 U.S. 263, 281-82 (1999).

For each of the reasons, Dr. Belcher is entitled to a new trial.  With regard to the <u>Brady</u>

analysis, it is clear that the government did not disclose that it "source-spreadsheets" which

became exhibits are faulty.  The court's analysis here is not whether they are faulty- they are- but

whether the government knew about it.  Even if this Court were to find that the government did

not know, or that this grossly prejudicial error were the result of negligence, Dr. Belcher is still

entitled to a new trial.  Alternatively, if the Court determines that the government knew the

exhibits were faulty, a dismissal of the indictment is appropriate.   *See* <u>United States v. Chapman</u>,

524 F.3d 1073 (9th Cir. 2008) and Section X, *infra,* for further discussion on why an evidentiary

hearing and discovery limited to this issue is necessary.


### III.     OVERVIEW OF MEDICAL BILLING PROCEDURES

Dr. Belcher and Dr. Ganesh used software called Lytec to process their claims

electronically.  Lytec is a practice management software and computer system that covers all

aspects of a medical practice, from comprehensive billing, scheduling, accounts receivable, case

management, automatic recall tracking and an ability to generate numerous data reports.  *See*

<u>Declaration of Lisa Reinshagen</u>, submitted herewith, pp. 8.  All of Dr. Belcher's claims were

submitted electronically through Lytec.

Gateway (Trezzeto Provider Solutions) is a clearinghouse system that accepts medical

claims from practice management software such as Lytec and processes the claims for accuracy

before clearing the claims for submission to insurance companies for payment.  Id, at pp 9.

Claims and payment tracking information is retained by Gateway.  Id.   After a service has been

provided to a patient, the provider will enter the relevant claims information into the Lytec

software.  Id at pp 10.  Once the necessary information has been input, Lytec will automatically

generate a "claim" (also referred to as a CMS 1500 or HCPA Form).  Id at pp 11.  This claim is

then electronically sent to the clearinghouse, also known as Gateway. Id.  The source of all

information sent electronically to insurers for payment b Dr. Belcher is the Lytec practice

management software.  Id.  Gateway will then make sure that information on the claim is accurate

and convert the data to ANSI format before sending it to the insurer.  Id at pp 12.  If the

information on the HCPA Form is no accurate or is missing, the clearinghouse (Gateway) will not

send the claim to the insurance company but instead stop processing the claim and make a report

of the incorrect or missing information on the claim.  Id at pp 13.  The provider can them fix the

problem identified and resubmit the claim.  Id.

　　　　When an insurer reimburses a claim submitted by a provider, the reimbursement

information, including the amount paid, is sent to Gateway where it is stored.  Id at pp 14.

Information on paid claims must be manually submitted into Lytec since Lytec does not

automatically record payments like Gateway does.  Id at pp 15.  A provider is not able to change

information submitted by him/her once the claim is stored in the Gateway system.  Id at pp 16.  If

the claim contains inaccurate information the provider will re-submit the claim and the corrected

claim is stored and processed.  Id.  The provider is not able to change any information maintained

by Gateway and the Gateway system maintains logs that record all transactions.  Id.  A provider is

also not able to change any information in Gateway's system related to reimbursements and the

date of the reimbursement.  Id.

　　　　The provider name, address (including zip code), Tax ID Number are preset in the Lytec

system and are not entered manually each time a claim is created.  Id at pp 17(c).  The patient

number for each patient also remains the same and is automatically entered when that patient is

selected for creating a claim.  Id.  Additionally, the address and zip code on the claim forms is the

same address and zip code where the reimbursement is sent.  Id at pp 17(b).  If claims were to be submitted without a patient number or a zip code, Gateway would reject the claim.  Id at pp 17(c).

Exhibit 2 to Ms. Reinshagen's Declaration contains a PowerPoint tutorial on how claims are submitted.  Exhibit 3 to her Declaration contains the Lytec User Guide.  Exhibit 4 to her Declaration are emails from Trizetto (Gateway) explaining and clarifying certain aspects of the Gateway system and responding to certain inquiries.

## IV.    THE SPECIFIC EXHIBITS AND "SOURCE" SPREADSHEETS USED IN THIS CASE AND THE ERRORS IN THOSE SPREADSHEETS

The address for Campbell Medical Group, also known as KRD, LLC was 18805 Cox Avenue, Saratoga, California, 95070.  Belcher used the Tax ID number 770516097.  Ganesh used the Tax ID number 75314781 and the Tax ID number for Kuhlman, Riley, Dewees (KRD), which was 770516097.  She purchased this business, also known as Campbell Medical Group in 2005.  Dr. Dewees worked there (for Ganesh) in 2005 and 2006 after Dr. Ganesh purchased the practice.  He then later went to work for Campbell Family Practice.  Campbell Family Practice is located at 1600 E. Campbell Avenue, Campbell, California, 95008.  Dr. Borodoulin and Dr. Dewees work together at Campbell Family Practice a medical practice completely unrelated to Ganesh and Belcher.

1. **15(c)(1)** entitled "003265 Aetna Part 1- SIU 43070."  This spreadsheet contains 6217 claims for Dr. Borodoulin using the address 1600 E. Campbell Avenue, Campbell, CA 95008 and the Tax ID is 320000859.  See Reinshagen Dec, pp 17(f) and Ex. 1 thereto.  These patients and these claims have nothing to do with Dr. Ganesh or Dr. Belcher.

2. **15(c)(2)** entitled 003265 Aetna Part 1 – SIU 43070."  This spreadsheet contains 6 claims for Dr. Dewees and the claimant's address is 1600 E. Campbell Avenue, Campbell, CA 95008.  These claims have nothing to do with Dr. Ganesh or Dr. Belcher.  This sheet shows the tax ID number for KRD, but has Dewees's address of 1600 Campbell Avenue and his zip code 95008.  Id, pp 17(g) and Ex 1 thereto.  Dr. Dewees has no reason to use KRD's tax id number and Belcher and Ganesh have no reason to use Dr. Dewees's address where claim reimbursement checks are sent.

6

3. **37(e)** entitled "Copy of 43070 SPM FBI."   This spreadsheet contains 71 claims that list Dewees as the provider, it lists the Tax ID for Dewees which is 320000859 and the address for Campbell Family Practice on this spreadsheet. Id, pp 17(i) and Ex. 1 thereto.

4. **38(a)** entitled "Copy of Dewees Subpoena."   This spreadsheet is from **Anthem's SIU unit**.  This spreadsheet contains 1220 claims, all submitted by either Dewees of Campbell Family Practice, all using Campbell Family Practice's Tax ID 320000859. Where an address is listed (many are missing), it is the address for Campbell Family Practice. Id at pp 17(h) and Ex. 1 thereto.  This entire spreadsheet has <u>nothing to do with Dr. Ganesh or Dr. Belcher</u>.

5. **38(b)** entitled "Copy of PIDMS-24-923 Subpoena."  This spreadsheet has many errors and it was this spreadsheet that was initially reviewed prior to Dr. Belcher's sentencing hearing by Eileen Reynolds, a Technical Support Technician for Medsoftware, Inc.   In her March 24, 2018 letter, she identifies numerous anomalies with a sampling of 19 claims contained on the spreadsheet.  *See* docket 384-11.  The errors, which are incorporated by reference herein, include the fact that there is no patient in the Lytec system by the names listed on the source spreadsheet, entries include hospital zip codes so the claims were not made by Belcher, payments are listed but no check numbers, provider zip codes are missing, missing explanations of benefits, patient account numbers are not associated with the patient, there are no corresponding patient account numbers in Lytec, no check numbers are listed, no payments received, inaccurate correlations to the Lytec data (from the spreadsheet), patients in Lytec, but no billings ever created for them, patients are not in Lytec at all. Id.   Many of these errors are such that the claims would have been rejected by Gateway, as is explained in Lisa Reinshagen's Declaration.  *See* Reinshagen Declaration, pp 17, 17(a), (b), (c), (d) and (e).  This spreadsheet, which is completely messed up, was relied upon by the government and probation to compute "loss

amounts" with regard to Belcher.  Notably, this also comes from Anthem and its SIU unit.

6.  **39(a)** entitled "Final Campbell Medical Group, Kuhlman, Riley, Dewees 092414 (Blue Shield)."   This spreadsheet contains three entries that list Dewees as the provider, but it contains the KRD Tax ID number.  There are no dates of service listed, but other entries on this spreadsheet show 2005 and 2006, so these are likely perfectly legitimate claims generated when Dewees did work for KRD after he sold it to Ganesh.  It is not any evidence of fraud.  *See*  Ex. 1 to Reinshagen Decl.

7.  **39(b**) entitled "Final Dr. Belcher, MD Only with npl_092414."   This spreadsheet uses the provider name as Belcher and the Tax ID number as 33160xxxx.  This is Dr. Belcher's social security number.  He has never used his social security number to bill any claim.  Id.  This spreadsheet could not have originated from any claims submitted by Dr. Belcher because his claims would have his Tax ID, as input in Lytec, not his social security number.  Id.

8.  **39(c)** entitled "Blue Cross Final Edward Dewees only 092414."  This spreadsheet uses a completely unknown Tax ID number that has never been used by Dr. Belcher or Dr. Ganesh, 254582508.   Some Tax ID numbers are missing.  It lists Dr. Dewees as the provider.  All but four claims list the address for Campbell Family Practice.  Id, and Reinshagen Dec. pp 17(j).

9.  **39(d)** entitled "Final Vilasini Ganesh Blue Shield."  This spreadsheet contains another unknown provider Tax ID number never utilized by Dr. Ganesh, 298961786.  A handful of the claims on this spreadsheet have Dr. Ganesh's proper Tax ID number.  There are numerous misspellings throughout this spreadsheet.

10.  **40(a)** entitled "R_1983_20150410_36638_Medical Results."  This spreadsheet contains a mix of provider data for Dr. Belcher, Dr. Ganesh, Campbell Medical Group and Campbell Family Practice.  As to the claims listed for Belcher, the address shown is a Post Office Box in Los Angeles and this address was never used by Dr. Belcher and does not appear anywhere in Lytec.  *See* Reinshagen Dec, Ex. 1.

11. **40(b)** entitled "R_1983A_2015046-36648_CW."  This spreadsheet appears to contain Cigna data for Dr. Ganesh.  While it lists her correct provider number and address it is missing all patient addresses.  Id.  Claims without patient addresses would not be processed through Gateway so they could not have been submitted to an insurance company.  Reinshagen Decl.

12. **40(c)** entitled "R_1983B_20150410_36638_CW."  The provider on this spreadsheet is Dr. Belcher and it lists his proper Tax ID, but as with 40(b) it is missing patient addresses and these claims would not have been processed without patient addresses. Id.

13. **40(d)** entitled "R_1983B_20150410_36638_CW.  These claims all reflect claims submitted by Dr. Borodoulin with Tax ID 320000859 and the address for Campbell Family Practice. Id, pp 17(k) and Ex. 1 thereto. These claims are completely unrelated to Dr. Belcher and Dr. Ganesh.

14. **42(c)** entitled "Galaxy1 sorted 09232014."  These claims are a mixture of Dr. Belcher and Dr. Ganesh with claims submitted by Dr. Dewees mixed in.  The Dewees claims include the Campbell Family Practice Tax ID and address and are unrelated to Dr. Ganesh and Dr. Belcher.  *See* Ex. 1 to Reinshagen Dec.

15. **42(d)** entitled "Galaxy2 sorted 09232014."  This spreadsheet contains claims submitted by Dr. Belcher and Dr. Ganesh and it also contains claims that are completely unrelated to Dr. Belcher and/or Dr. Ganesh, submitted by Dr. Dewees, with his Tax ID number and his address.  These claims are from Cigna.  *See* Dec of Lisa Reinshagen, pp 17(k) and Ex. 1 thereto.

16. 42(e) entitled "Galaxy3 sorted 09232014."  This spreadsheet also contains mixed claims for Belcher, Ganesh and Dewees.  As in 42(d) the Dewees claims have the tax ID for Campbell Family Practice along with CFP's address.  The Belcher claims on this spreadsheet list a provider address of 751 S. Bascom Avenue. This is the address for County Hospital, not Dr. Belcher.  He did not submit any claims with that address. *See* Ex. 1 to Reinshagen Dec.

17. 42(f) entitled "Galaxy4 Sorted 09232014."  Same as above.  Id.

18. 42(g) entitled "Galaxy5 Sorted 09232014."  Same as above.  Id.

19. 42(h) entitled "PacificCare1 Sorted."  This spreadsheet consists entirely of claims submitted by Edward Dewees with the Tax ID for CFP and the address for CFP.  All claims here are completely irrelevant to Dr. Belcher and Dr. Ganesh.  *See* Reinshagen Dec, pp L and Ex. 1 thereto.

20. 42(j) entitled "SecureHorizons Sorted."  This spreadsheet contains claims for Dr. Belcher, Dr. Ganesh and Dr. Dewees. The claims submitted by Dewees show the Tax ID for CFP and the address for CFP and are completely unrelated to these defendants.  *See* Ex. 1 to Reinshagen Dec.

Each of these exhibits were admitted at trial on November 6, 2017 subject to all prior objections, litigation and court rulings on the admissibility of the "insurance source spreadsheets."  Reporter's Transcript ("RT") 11/6/17 at pp 5-9.   The manner in which the government used the false spreadsheet at trial is discussed in detail in section V(A), *infra*.

Attorney Ted Cassman, former CJA counsel for Dr. Ganesh, sought leave of this Court on March 9., 2018 to supplement his Motion for New Trial filed on behalf of Dr. Ganesh with information about some of these errors.  Docket #374, incorporated by reference herein.  In his Motion for Leave, which was vigorously opposed by the government and then denied by this Court, he noted that there were errors contained in Exhibits 15(c), 37(e), 39(c), 40(a), 40(d), and 42(d),(e),(f),(g),(h) and (j).  Id, pages 7-8.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.      THE MANNER IN WHICH THE FALSE SPREADSHEETS WERE USED BY THE GOVERNMENT AT TRIAL DEMONSTRATES SUBSTANTIAL DUE PROCESS VIOLATIONS AND DENIAL OF THE RIGHT TO A FAIR TRIAL FOR BOTH DEFENDANTS**

**A.  The Government Presented the Spreadsheets as Evidence of Fraud Throughout the Trial**

As noted previously, the exhibits at issue were all admitted on November 6, 2018, subject to all of the prior objections made by defense counsel for both defendants.  Ironically, defense counsel argued that it was a confrontation clause violation because there was no witness available to cross examine as to how the spreadsheets were prepared.  Docket 143.  The government sought admission of the spreadsheets as business records, alleging that they were records "regularly kept in the ordinary course of business" by the insurance companies.  Docket 143.   Obviously, that is an impossibility because a substantial portion of the data was never submitted to the insurance companies, nor could it have been based on missing data and errors in the spreadsheets that allegedly came from the insurance companies.  Then there is the fact that much of the data that was provided and used by the government was irrelevant to these defendants.

On November 20, 2017 the government presented "source spreadsheets" 42A, B, C, D, E, F, G, H and I as evidence of fraud against United Health Care through its witness Jacob Kearney. RT 11/20/17, pp 79-81.

On November 21, 2017, the government presented "source spreadsheets" 38A and B as evidence of fraud against Anthem through its witness Julie Haskins.  RT 11/21/17, pp 83-84.

On November 21, 2017, the government presented "source spreadsheets" 15A,B and C and 37A, B, C and D as evidence of fraud against Aetna through its witness Kathy Richer.  RT 11/21/17, p 35-36.

On November 20 and 21, 2017, the government presented "source spreadsheets" 39A, B, C and D as evidence of fraud against Blue Shield through its witness Alex Kondratenko.  RT 11/20, pp 210-211; RT 11/21/17 pp. 4-6.

On November 21, 2017, the government presented "source spreadsheets" 40A, B, C and D as evidence of fraud against Cigna through its witness Tammy Sue Kahler.  RT 11/21, pp 175-176.

In its closing argument, the government argued:

- The claims submitted by Ganesh were commonly, if not always false.  RT 12/12/17, p. 59.
- "Look at the Cigna spreadsheet."  Id, p. 60.
- They frequently billed as if Dewees were the doctor providing the care. "This is another way the claims were false, particularly with two insurers, Anthem and Blue Shield."  Id., p. 61.
- "The claims frequently indicate that Dewees is the doctor providing the care for Ganesh's patients."  Id.
- "They [claims] commonly show Dr. Dewees as treating physician in 2011, 2012, 2013. That is not true and that is false."  Id.
- "One of the elements of health care fraud is that falsity is material."  Id.
- "Look at Exhibit 38A.  It's all Edward Dewees."  Id., p. 78.
- "Overwhelmingly Edward Dewees."  Id., p. 79.
- In reference to Exhibit 39(a), "It's always Kuhlman, Riley and Dewees.  How could he know to do that without an agreement?  A joint plan?"  Id., p. 79.
- "And it lines up across these two insurers [Anthem and Blue Shield].  It lines up for a very long time.  There's a similar pattern with Aetna Claims."  Id., p. 80.
- Exhibit 38(b) is presented on the projector as evidence of fraud.  Id., p. 85.
- Stating that Exhibit 39(a) is "all Dewees" as evidence of fraud.  Id., p. 86.
- Bolstering the accuracy of its fraudulent spreadsheets:  "All of the claims corroborate the accuracy of the source spreadsheets."  Id., p. 90.
- Stating that the fraud can be found and corroborated in the "source spreadsheets."  Id., p. 91.
- Stating that "source spreadsheet" 39(b) is evidence of fraud.  Id., p. 92.

- Stating that "source spreadsheet" 38(b) is evidence of fraud because it is Dewees.  Id., p. 96.

- "Dewees wasn't there, that's false."  In reference to Exhibit 39(a).  Id., p. 97.

- Stating that Count 16 against Belcher can be corroborated by Exhibit 39(b).  Id., p. 102.

The faulty spreadsheets were presented throughout the trial, against both defendants, as evidence of fraud.   They are evidence of the government committing fraud against the defendants in this case, and a fraud upon the court.  The source spreadsheets were used by the government to create summary spreadsheets (trial exhibits no. 118 – 123) and summary claims calendars for each testifying patient witness (trial exhibits no. 146 – 153).  These summary calendars were also used in the cross-examination of Dr. Belcher which was subsequently used to justify an obstruction of justice upward adjustment at his sentencing.  These source spreadsheets were frequently displayed to the jury and were extensively used by the government during its closing arguments.  For sentencing, the same source spreadsheets were turned over to the Probation Officer as justification for the loss amounts the government wanted to see applied.

### B.  The Presentation of False Evidence at Trial Violates Due Process and the Right to a Fair Trial

It is well settled that the presentation of false evidence violates due process.  Napue v. Illinois, 360 U.S. 264, 269 (1959)("[A] state may not use false evidence, including false testimony, to obtain a tainted conviction. . ."); United States v. LaPage, 231 F.3d 488 (9th Cir. 2000)("The due process clause entitles defendants in criminal cases to fundamentally fair procedures. It is fundamentally unfair for a prosecutor to knowingly present perjury to the jury.").  If the false evidence is material—that is, reasonably likely to have affected the judgment of the jury—the defendant's conviction must be reversed.  United States v. Agurs, 427 U.S. 97, 103 (1985); Phillips v. Woodford, 267 F.3d 966, 985 (9th Cir.2001).  The fundamental unfairness of a conviction obtained through the use of false evidence has long been recognized by the Supreme Court.  Mooney v. Holohan, 294 U.S. 103 (1935); Pyle v. Kansas, 317 U.S. 213 (1942); Napue, supra.  As the Court noted in Agurs, this conduct not only violates constitutionally mandated

disclosure obligations, but "involves prosecutorial misconduct" and a "corruption of the truth-seeking function of the trial process."  427 U.S. at 104.  The Supreme Court has therefore imposed "a strict standard of materiality" where the prosecution uses evidence that it knew or should have known was false.  In such a case, the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  Id at 103.

At issue in this case are substantial due process violations and violations of the defendants' basic right to a fair trial.  5th Am., 6th Am. U.S. Const.

**C. The Government Has Been on Notice of the Errors Since At Least March 9, 2018 and Instead of Addressing the Fact That It Presented False Evidence to the Jury as "Evidence of Fraud" In Order to Secure Convictions in This Case, The Government Has Doubled Down on Its Mission to Further Violate Myriad Constitutional Rights of Both Defendants**

On March 9, 2018, Ted Cassman, Dr. Ganesh's then CJA counsel, filed a Motion seeking administrative leave to file a Supplement to her Motion for New Trial.  Docket #374.  In his Declaration attached thereto, he explained that after he filed her Motion for New Trial, he turned his attention to sentencing matters and loss amounts.  It was then that he discovered that there were thousands of inaccuracies in the government's so called "source-spreadsheets."  Docket #374-1.  In the body of the Motion he describes the inaccuracies that he noticed, and those are referenced above in Section IV.  He explains that it would be appropriate to supplement the Motion that he had filed exactly one week earlier to address these newly discovered claims.  Id.

The government's response to this Motion for Leave to file a Supplement makes several arguments.  First, the government alleges that the information is not newly discovered.  Docket 376, page 2. The government states, "Nothing in the Supplemental Motion is based upon new evidence.  Instead, it is simply yet another effort to argue the admissibility and weight of the source spreadsheets."  Id.  Actually, Cassman's Motion for Leave is not another argument about the admissibility of business records. It is an allegation that the spreadsheets are inaccurate and irrelevant to the defendants in this case.  Second, the government falsely states that "The evidence

1  has been known before and throughout the trial to Ganesh, which is reflected in her multitude of

2  motions and trial objections concerning them."   Id.  While it is true there were multitudes of trial

3  objections and litigation about the source spreadsheets, those arguments were based on

4  confrontation clause protections and a dispute as to whether they were admissible as business

5  records.  No one, prior to Cassman, realized that the government's so called "source

6  spreadsheets" were actually inaccurate, false and misleading to everyone.  The government then

7  doubles down with "The fact that Ganesh's attorney thinks that he has a new argument

8  concerning the Source Spreadsheets does not mean that Ganesh has obtained new evidence to

9  challenge the verdict."  Id.  Again, Cassman was the first person to notice the inaccuracies and

10  his Motion is the first time this issue appears in the record.  The other challenges were based on

11  confrontation clause and business record doctrines and rules.

12       The government wrongly states that a Motion for new trial must be filed within 14 days.

13  A Motion for New Trial can be filed within 3 years based on newly discovered evidence pursuant

14  to Rule 33 of the Federal Rules of Criminal Procedure.

15       The government then goes on to state that the Supplemental Memorandum has "no merit."

16  Id.  However, out of an abundance of some kind of caution, the government asks that if the

17  supplement is permitted, that it be permitted sufficient opportunity to respond stating:

18

19       In such a scenario, the government anticipates that it will argue that the
Supplemental Motion adds nothing new to the argument, and contravenes nothing

20  in the well-established law supporting, that the Source Spreadsheets were properly
admitted as business records.  Furthermore, to the extent that Ganesh is arguing

21  that Rule 403 prohibited the introduction of the Source Spreadsheets (which she
appears to be making -despite citing no legal authority- by suggesting that the
Source Spreadsheets created jury confusion), this too has no merit.  The

22  government anticipates arguing that the Source Spreadsheets indicated a number
of data points, including how Ganesh billed for Dr. DeWees' purported medical

23  services during the relevant time period *and* what Dr. DeWees' actual billing and
true medical services were.  Ganesh confuses (perhaps intentionally) the data

24  points in the Source Spreadsheets that illustrate when Dr. Ganesh billed as if Dr.
Dewees provided the care, and the Spreadsheets that showed when he actually

25  provided the care, including when he associated himself with another medical
practice after separating from Ganesh.  Both sets of data points are squarely

26  relevant to determining when Ganesh fraudulently billed services to insurers that
purported to be conducted by Dr. Dewees.

27

28

Id, at p. 3.  This all sounds great and it is obviously the only place the government can lead this train while trying to keep it on the tracks, but it is not how the government actually used the inaccurate and irrelevant "source spreadsheets" at trial.  They were used as evidence of fraud committed by Belcher and Ganesh and not to make comparisons of what good billing actually looks like.  This complete proposed re-write by the government is pretty offensive.

The next events that cause the government to address the accuracy of the "source spreadsheets" is Dr. Belcher's sentencing.  In that context, the government continues to maintain that the spreadsheets are accurate and there is even an attack on correspondence sent from Trizetto (Gateway) that causes the court to think, incorrectly, that Ms. Chung has somehow left off parts of the communication.  She did not.  Dockets 398, 398-1.

After Dr. Belcher was sentenced, he filed a Motion for Release Pending appeal.  In the government's response to that Motion, the government argues as follows regarding the source spreadsheets:

> Third, Belcher once again challenges the admission of the Source Spreadsheets. This issue has been raised multiple times in prior filings by Belcher, and each time, it has been exhaustively addressed by the government's response and thoroughly rejected by the Court's resulting order. (citing dockets 340,363). The only new argument that Belcher adds to this analysis is that the Source Spreadsheets are allegedly "riddled with errors." He provides no support for that assertion and it remains unsubstantiated by Belcher.  In contrast, the overwhelming weight of the evidence at trial established that the Source Spreadsheets were reliable, accurate and that the creators of the spreadsheets (the insurers) had every reason to maintain the reliability and accuracy of the spreadsheets. [citations omitted]

Docket 426, pp 5-6.

After this Court denied Dr. Belcher's Motion for Release Pending Appeal, Dr.Belcher made his request for Release Pending Appeal in the Ninth Circuit Court of Appeals.  In response to Dr. Belcher's Motion in the Ninth Circuit, the government's position on the source spreadsheets was as follows:

> In his present motion, Belcher raises a new challenge to the spreadsheets, arguing they are "riddled with inaccurate and missing data." Mot. 11. For this claim, Belcher cites nothing more than a declaration drafted by Ganesh's attorney and attached to a supplemental post-trial motion that Ganesh attempted to file, on

1  her own behalf, on March 9, 2018. CR 374.  That was a month *after* the district
   court denied Belcher's own motion for acquittal or a new trial.  GA 15-36.

2
        Belcher's new argument is frivolous.  After the government demonstrated
3  why Ganesh's supplemental motion was untimely and meritless (GA 77-79), the
   district court denied her leave to file it.  GA 80.  Therefore, Ganesh's unfiled
4  supplemental motion and counsel's accompanying declaration—the basis for
   Belcher's present claim—are not part of the record.

5
        Moreover, because Belcher raised only a Confrontation Clause challenge to
6  the spreadsheets when moving for acquittal or a new trial he waived this new
   evidentiary claim.  (citations omitted)  If he attempts to raise it on appeal, this
7  Court will not consider it.  (citations omitted)  At most Belcher's new claim would
   be reviewed for plain error. Belcher would need to demonstrate that admission of
8  the spreadsheets (1) was error, (2) that was plain, (3) that affected his substantial
   rights, and (4) that seriously affected the fairness, integrity, or public reputation of
9  judicial proceedings.  (citations omitted).  Belcher cannot make those showings
   and does not try.

10
        At any rate, Ganesh did not assert, much less establish, any errors in the
11  spreadsheets.  She merely argued about the spreadsheets' relevance.  Specifically
   Ganesh alleged that the spreadsheets included claim submissions data of doctors
12  other than Ganesh or Belcher.  CR 374.  That is true: the spreadsheets included
   billing data of additional doctors associated with Ganesh's practice—Dr. Dewees
13  (from whom Ganesh bought the practice, and whose identity Ganesh used for
   billing) and another doctor with whom Dr. Dewees later worked.  But the
14  spreadsheets were highly relevant at trial (citation omitted) and Belcher has no
   basis for claiming they are "riddled with errors and missing data."  Moreover,
15  when Belcher and Ganesh cross examined insurance witnesses about the
   spreadsheets, the defendants failed to identify any error.  (citations omitted).  In his
16  bail motion to this Court, Belcher likewise fails to identify any error in the
   spreadsheets.

17
   CA9 Docket 12-1, pages 17-19.  Here, the government's theme is that Dr. Belcher has
18
   forfeited his right to make the argument, that Dr. Becher has not shown any errors, and
19
   that even if he adopts the position Dr. Ganesh tried to assert (relevance) they were "highly
20
   relevant."  The government declaring documents relevant does not make them relevant.
21
   Furthermore, this is yet another walk-back by the government to obscure the fact that even
22
   if the source spreadsheets could have had a possible relevant use—that is clearly not how
23
   the government used the source spreadsheets in this trial. There is a record that belies all
24
   of these eleventh hour suggestions by the government.
25
        This is not the end of the source spreadsheet dance by the government.  It's final
26
   chapter is perhaps the most egregious.  In response to Dr. Ganesh's CJA counsel's Motion
27
   for Rule 17 subpoenas to issue, the government opposes the issuance of subpoenas to a
28
   third party through a process designed to ensure that indigent defendants have adequate

17

resources to litigate their cases to the same extent a non-indigent defendant would be permitted to do so.  Not only is it improper for the government to asserts a position on behalf of its witnesses and legal process related to them, it is improper for the government to assert itself into the strategy and decision making process of appointed defense counsel. In it's opposition to the Rule 17 subpoenas, the government:

- Complains that Ganesh could have made these requests prior to trial and that she should not need to do it now.  Docket 454, page 2.
- Why she continues to assail the spreadsheets even though all of her prior efforts have failed.  Id. (Maybe because the government has done everything it can to prevent her from actually making the challenges.  E.g. docket 376.)
- Asserts that random two pages sequences of questioning was a sufficient cross examination of insurance witnesses and that it yielded nothing so there is nothing to gain by subpoenaing information from the insurance companies now.  Docket 454, page 2.
- Her subpoenas are vague and Mark Flores's declaration is undated.  Id.
- Flores's declaration shows that the source spreadsheets are accurate. Id, p.3.  (It actually does not say that.)
- The effort ignores the evidence at trial and misreads the spreadsheets.  Id.
- The government has standing because the subpoenas would infringe on the government's interest.  Id.
- The requested subpoenas would harass the insurance company victims and delay sentencing and resolution of this case.  Id.
- It might violate Ganesh's patients' right to privacy.  Id.
- Rule 17 subpoenas really aren't proper after trial.  Id, page 4.
- The application must be made in food faith and not support a fishing expedition. Id.
- Ganesh is only requesting subpoenas to harass the "victims" in the case.  Id.

1

2

- The bulk of the loss associated to Ganesh is from Anthem and Exhibit 38(b).  Id., page 5.

3

4

- It is not feasible to analyze tens of thousands of claims to determine the loss applicable at sentencing.  Id, page 6.

5

6

7

- The government's loss amount is no mystery, it relies on claims submitted by Ganesh listing Dewees as the provider and everything needed to determine this is already in the source spreadsheets. Id.

8

9

- The source spreadsheets are accurate.  Id, page 7.  And this is the title of an entire subsection.

10

- Neither Belcher or Ganesh have identified an inaccuracy in the spreadsheets.  Id.

11

12

- Ganesh attempts to cite inaccuracies but merely cites to Belcher's sentencing documents.  Id.

13

14

- Belcher's sentencing documents prove the spreadsheets are accurate.  Id, pages 7-8.

15

16

- We can't trust Lytec or Gateway because the systems were not scrutinized at trial.  Id, page 8.

17

- Ganesh does not explain her pre trial lack of diligence.  Id, pages 8-9.

18

19

- Ganesh can just use the government's source spread sheets to prepare for her sentencing.  Id, page 9.

20

- Ganesh does not act in good faith, she is just trying to delay the sentencing.  Id.

21

22

- It would be unduly burdensome to the insurance company victims to have to comply with *Ganesh's subpoena*.  Emphasis added.  Id, page 10.

23

24

25

26

Over half of these assertions are belied by the record.  All assertions show the government's desperate attempts to avoid any scrutiny of the government's use of false data at trial in order to secure convictions of these defendants.  It is definitely a stellar effort by the government.

27

. . .

28

. . .

1

2

## VI.    OTHER UNEXPLAINED ERRORS FROM RANDOM SAMPLINGS OF 1500 FORMS

In conducting a random sampling from just two spreadsheets, the information on the government's "source spreadsheets" which purports to come from the insurers does not match the data on the 1500 form stored by Lytec and Gateway.  Here is a breakdown of how those small samples are different:

**Spreadsheet 15C2**

Provider Tax ID is:       942443757

Provider Name:            Dewees

Provider Address:         1600 Campbell Avenue, Campbell, CA  95008


Lytec:

Provider Tax ID is:       753147871

Provider Name:            Vilasini M. Ganesh, MD

Provider Address:         18805 Cox Avenue, Suite 160, Saratoga, CA  95070


Gateway:

Provider Tax ID is:       753147871

Provider Name:            Vilasini M. Ganesh, MD

Provider Address:         18805 Cox Avenue, Suite 160, Saratoga, CA  95070

There are two samples for this spreadsheet, both reflect the data listed above. The 1500 forms will be filed under seal, in a supplemental filing, as they contain confidential patient data.


**Spreadsheet 39B**

Provider Tax ID is:                331-60-XXXX

Lytec CMS 1500 Tax ID is:   770516097

Gateway Provider Tax ID is: 770516097

There are 5 samples from this spreadsheet, all reflect the data listed above. The 1500 forms will be filed under seal, in a supplemental filing, as they contain confidential patient data.

### VII.   THE GOVERNMENT FAILED TO DISCLOSE, AND STILL HAS NOT DISCLOSED, THE INVESTIGATION AND INDICTMENT OF AN ANTHEM SIU INVESTIGATOR

On May 22, 2018 the United States Attorney's Office in the Central District of California announced that it had indicted five individuals, including a one-time fraud investigator for Anthem's Special Investigation Unit (SIU).  *See* Exhibit A, press release, attached hereto.  The press release explains that the former SIU investigator, Gary Jizmejian, was a senior investigator at Anthem's Special Investigation Unit, the "anti-fraud unit within Anthem that is responsible for investigating health care fraud committed against the insurance company."  Id.  It goes on to explain that in exchange for cash payments, Jizmejian assisted other conspirators by helping them submit fraudulent bills to Anthem.  Id.  In September 2012, Jizmejian gave co-conspirators billing codes to use for submitting fraudulent claims to Anthem so the claims for cosmetic procedures would not be rejected.  Id.  In September 2015, Jizmejian used confidential information from Anthem to tip off co-conspirators that about a federal criminal investigation into their clinics.  Id.

The Indictment was filed on May 17, 2018.  *See* Exhibit B, attached hereto.  It alleges that the conspiracy took place between 2012 and April 2017.  Id.  This is during the time frame that Anthem was purportedly investigating Dr. Ganesh and/or Dr. Belcher.  The fraud was investigated by federal agents and is prosecuted by the United States.  This was impeachment evidence that was material and it should have been disclosed to the defendants prior to trial in this case.  The government still has not disclosed any information to the defendants about the investigation and indictment of Jizmejian.  This is a violation of the defendants' due process rights under Brady v Maryland.  The government cannot suggest that it is not material.  Anthem was one of their primary victims throughout this case.  Exculpatory evidence, even if it is only impeachment evidence must be disclosed whether it goes to the issue of guilt or punishment.  Dr.

1  Ganesh has yet to be sentenced and this information still has not been disclosed to any defendant

2  in this case.

3  The government has an obligation pursuant to Brady v. Maryland, 373 U.S. 54 (1963) to

4  provide the defense will all exculpatory or impeachment evidence within the government's

5  possession. Id at 87.  When the government violates this duty, the government deprives the

6  defendant of due process of law.  Id.  The defendant is entitled to a new trial if:  (1) the evidence

7  at issue was favorable to the defendant, (2) the government violated its duty and suppressed the

8  evidence, and (3) the government's violation prejudiced the defendant.  Strickler v. Greene, 537

9  U.S. 263, 281-281 (1999).

10  The evidence was favorable to the defendants in this case.  The claims from Anthem were

11  the darling of the government in this trial.  The government has insisted throughout the

12  proceedings that all of its spreadsheets were accurate and reliable.  Never once did the

13  government disclose that a senior investigator in the very fraud unit from which it was receiving

14  allegedly reliable data was himself being investigated by the government.  "Evidence is material

15  and favorable if there is a reasonable probability that the disclosure would have changed the

16  trial's result."  United States v. Ross, 372 F.3d 1097, 1107 (9th Cir. 2004).  A defendant must only

17  show that the "favorable evidence could reasonably be taken to put the whole case in such a

18  different light as to undermine confidence in the verdict."  United States v. Jernigan, 492 F.3d

19  1050, 1054 n.7 (9th Cir. 2007)(quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

20  The government knew of and had possession of the information.  The government is

21  responsible for any favorable evidence known to the other agents acting on the government's

22  behalf.  Kyles v. Whitley, 514 U.S. at 437.  The government being "in a unique position to obtain

23  information known to other agents of the government," has an affirmative duty to learn of

24  evidence in those other agents' possession."  Carriger v. Stewart, 132 F.3d 463, 479-80 (9th Cir.

25  1997).  "The government cannot with its right hand say it has nothing while its left hand holds

26  what is of value."  United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995)(citing United States v.

27  Endicott, 869 F.2d 452, 455 (9th Cir. 1989).

28

22

The government's failure to disclose the investigation, which had to have been well known to the government by October 2017 prejudiced the defendants.  It deprived them of pretrial arguments regarding the reliability of any data produced from Anthem's SIU, it deprived them of formulating a defense focused on the credibility and reliability of any data from Anthem's SIU and it deprived them of post-trial and sentencing litigation surrounding any data from Anthem's SIU. The fact that the government still has not disclosed the information is troubling.  Defense counsel should not have to depend on getting lucky enough to just happen to learn about an investigation and indictment in another district.

The defendants are entitled to a new trial based on this Brady violation and this court has the discretion to grant a motion for new trial based on this violation alone.

## VIII.   THE EVIDENCE DESCRIBED HEREIN IS NEWLY DISCOVERED

The government has taken alternating positions in its various attempts to dance away from the false spreadsheets and/or their inappropriate use at trial.  In various instances the government alleges that the evidence is not new, that the spreadsheets were already litigated.  Realizing that this is not really accurate, it then began asserting that the information could have been discovered prior to trial.

The truth is that Ted Cassman first discovered the problems with the government's spreadsheets sometime between the filing of the Motion for New Trial/Judgment of Acquittal for Ganesh (on March 2, 2018) and March 9, 2018 when he filed a Motion for Administrative Leave to File A Supplement to the Motion for New Trial.  Docket 374. That is the first moment that any defendant in this case realized that the government used thousands of irrelevant claims to prove that they committed fraud and that the spreadsheets contained errors.  More detailed analysis for Dr. Belcher began on March 25, 2018 and have continued up until Saturday, July 21, 2018. Given more time, additional errors will only continue to be discovered.   The Brady material about Anthem's SIU senior investigator was not capable of being discovered by the defendants until May 22, 2018.  All of it is newly discovered, post-trial.

Ganesh's attempts to properly analyze the data and to be in a position to describe what is wrong have been opposed by the government at every turn, as described herein.  The government has a strong interest, apparently, in ensuring that Ganesh and her counsel are unable to discover all of the errors in the government's source spreadsheets.   The government vacillates between arguing that it is not newly discovered and that it should have been discovered prior to trial.  It is the government, however, who utilized false data and it is the government who misled the court and the jury by telling them that claims submitted by Drs. Dewees and Borodoulin were falsely submitted by Drs. Belcher and Ganesh.  Ergo, it should not be the government arguing that the defendants have somehow waived their right to discover the government's wrongdoing.

Nonetheless, trial counsel were ineffective for failing to retain an expert to review the government's spreadsheets and its alleged loss calculations and this Court can adjudicate this claim now.  The government's misconduct could have been discovered earlier had Dr. Belcher's trial counsel retained an expert to review the "source spreadsheets."

### IX.    TRIAL COUNSEL FOR BELCHER WERE INEFFECTIVE BECAUSE THEY DID NOT RETAIN AN EXPERT TO REVIEW THE GOVERNMENT'S SOURCE SPREADSHEETS

Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance claim raised in a motion for new trial.  Id, at 697-98. A district court may vacate any judgment and grant a new trial if the interest of justice so require.  United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992).

Under Strickland, Dr. Belcher must make two showings: that counsel's performance was deficient, and if so, whether the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. at 687.  The proper standard for attorney performance is that of "reasonably effective assistance."  Id.  "A defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.  Id at 693.  The defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  In deciding the issue, the court should

keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial  testing process work in a particular case.  Id at 690.

Here, trial counsel for Mr. Belcher should have understood the spreadsheets sufficiently to make a relevance objection to the spreadsheets prior to trial.  Trial counsel also should have retained an expert to (1) review the spreadsheets for errors, (2) educate trial counsel on the process of submitting claims, (3) review the Lytec and Gateway databases to determine discrepancies between the information that government stated derived from the insurance company victims, (4) assist in pretrial motions to litigate the accuracy and reliability of the "source spreadsheets," prior to trial and (5) assist and testify at trial if necessary on the inefficacies of the government's alleged proof of frauds vis a vis the "source spreadsheets."   The failure to do this worked a manifest injustice in this case because the result was that the government's inaccurate and erroneous source spreadsheets were used to convince the jury that the defendants committed fraud when in fact many of the spreadsheets themselves were not evidence of any fraud.  The lack of an expert who would have aided trial counsel in understanding the government's "source spreadsheets" led to the enabling the government to mislead the court and the jury.  Trial counsel did not understand, at the time of trial, what the government was doing with the "source spreadsheets" and did not become aware of the errors in the spreadsheets and the misuse of a bulk of the source spreadsheets until after trial and in fact after it had filed its post-trial motions.

Further exacerbating the situation, the source spreadsheets were used by the government to create summary spreadsheets (trial exhibits no. 118 – 123) and summary claims calendars for each testifying patient witness (trial exhibits no. 146 – 153).  These summary calendars were also then used in the cross-examination of Dr. Belcher which was subsequently used to justify an obstruction of justice upward adjustment at his sentencing.

The inability of trial counsel to address the inaccurate data presented in the source spreadsheets infected the proceedings from the pretrial motions to dismiss to the litigation about the source spreadsheets (these indictments were obtained through the faulty source spreadsheets, defense counsel could have argued that the spreadsheets contained errors and were not reliable,

1    that the data did not match the Lytec and Gateway data and that they were accordingly not

2    reliable in addition to not being relevant); to the trial (opening statements, cross examinations,

3    presentation of defense witnesses to include the expert, and closing arguments would have been

4    different), to the post trial litigation (the motion for new trial/motion for judgment of acquittal

5    would have been different) to the sentencing.  The lack of a billing expert infected every stage of

6    the proceedings with regard to Dr. Belcher.

7        The entire proceedings in this case were presented through a faulty prism created by the

8    government which then went unchallenged by defense counsel.  The result was not only deficient

9    performance by virtue of the failure to retain a defense billing expert, but a prejudice so

10   substantial that it affected every phase of the proceedings.  A new trial is warranted based on this

11   issue alone.

12

13   **X.    AN EVIDENTIARY HEARING IS NECESSARY, ALONG WITH
         DISCOVERY FOR THIS PURPOSE TO DETERMINE WHETHER THE
         GOVERNMENT'S ACTIONS WERE INTENTIONAL, WANTONLY
         RECKLESS OR SIMPLY NEGLIGENT DUE TO A MISUNDERSTANDNG
         OF ITS OWN DATA**

14

15

16

17       The spreadsheets were erroneous, inaccurate to the point of being completely unreliable

18   and they were misused by the government as evidence of fraud when in fact, they were not

19   evidence of fraud at all.  This we know. The question the Court must decide is whether the

20   government knew the spreadsheets contained inaccurate and false data and whether the

21   government intentionally misused the "source spreadsheets" in a manner that was designed to

22   mislead the jury and the court in order to secure convictions against the defendants in this case.

23   An evidentiary hearing is requested for this purpose and discovery of internal communications is

24   necessary for the court to make this determination.

25       If in fact the government acted intentionally or with wanton recklessness, the superseding

26   indictments should be dismissed and the simple remedy of a new trial will not suffice.  This

27   Court's authority to dismiss an indictment based on outrageous government conduct is well

28   established.  A district court may dismiss an indictment based on outrageous government conduct

26

1   if the conduct amounts to a due process violation.  United States v. Doe, 125 F.3d 1249 (9th Cir.

2   1997) (quoting United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991).

3          Even if the conduct does not amount to a due process violation (which it does here), a

4   court may nonetheless dismiss charges under its supervisory powers.  The court may exercise its

5   supervisory powers to remedy a constitutional or statutory violation; to protect judicial integrity

6   by ensuring that a conviction rests on appropriate considerations . . ., or to deter future illegal

7   conduct. Id, at 1253; United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008); United States v.

8   Williams, 112 S.Ct. 1735, 1742 (1992) (supervisory power "may be used as a means of

9   establishing standards of prosecutorial conduct before the courts themselves"); United States v.

10  Kojayan, 8 F.3d 1315 (9th Cir. 1993) (remanding case for determination of whether indictment

11  should be dismissed as sanction for failure to disclose cooperation agreement); United States v.

12  Leung, 351 F.Supp.2d 992 (C.D. Cal 2005) (dismissing indictment based on improper provision

13  in plea agreement restricting defense access to witness); United States v. Bernal-Restrepo, 930

14  F.2d 705, 712 (9th Cir. 1991).

15         As emphasized by the Ninth Circuit Court of Appeals, a district court's exercise of its

16  supervisory powers is a means by which the federal courts fulfill their role in the criminal justice

17  system.  "Judicial supervision of the administration of criminal justice in the federal courts

18  implies the duty of establishing and maintaining civilized standards of procedure and evidence."

19  United States v. Ross, 372 F.3d 1097 (9th Cir. 2004) (citing McNabb v. United States, 318 U.S.

20  332, 342 (1943)).

21         The question of whether a district court can dismiss an indictment with prejudice under its

22  supervisory power in response to prosecutors' intentional, reckless or even willfully blind due

23  process violations at trial that would cause prejudice to the defendant or create a substantial threat

24  thereof at a retrial has already been answered by the Ninth Circuit in United States v. Chapman,

25  524 F.3d 1073 (9th Cir. 2008). In that case, the Ninth Circuit held that the district court properly

26  used its supervisory power to dismiss an indictment with prejudice where the prosecutors had

27  "reckless disregard for [their] constitutional obligations" and a second trial would unfairly allow

28  them to fix their mistakes at the first trial. Id at 1085, 1087.  Even if the government is to assert

1   that they did not know about the errors, willful blindness is a higher level of culpability, so the

2   willfully blindness presentation of false data to a jury and court likewise supports the use of this

3   Court's supervisory power to dismiss an indictment with prejudice.

4        Recklessness means knowing of and disregarding a substantial and unjustified risk of

5   harm. As the Supreme Court has recognized, a person who is "reckless" does not "actually know

6   the critical facts," but instead "merely knows of a substantial and unjustified risk" of those facts.

7   Globe-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769-70 (2011). "[A]cting or failing to

8   act with deliberate indifference to a substantial risk of serious harm . . . is the equivalent of

9   recklessly disregarding that risk." Farmer v. Brennan, 511 U.S. 825, 836 (1994).

10       Willful blindness is a more culpable state of mind that is equivalent to knowledge.  A

11  person is willfully blind if he deliberately shields himself from clear evidence of critical facts that

12  are strongly suggested by the circumstances.  Global Tech Appliances, 563 U.S. at 766.

13       With the government's latest round of defense against criticism of the "source

14  spreadsheets" being "its too late, this should have been challenged pretrial," it is appearing more

15  and more as if the government knew that the spreadsheets were inaccurate.  But the inaccuracies

16  are only one prong of the problem. The other problem is the government's knowing use of data

17  that was not fraudulent at all but was presented to the court and the jury as if it were evidence of

18  fraud.  It is hard to imagine a scenario where this was not intentional.  It is not a defense to the

19  intentional violation of a defendant's due process rights and right to a fair trial to simply say "the

20  defendants misunderstood the data" or "they should have challenged this before trial."  The fact

21  is, the government misused the "source spreadsheets" and it did so to obtain a result, because that

22  result was more important to the prosecutors in this case than the due process rights of these

23  defendants and their right to a fair trial.  Just because you can get away with violating a

24  defendant's constitutional rights does not mean you should.

25       For these reasons, it is requested that an evidentiary hearing is held to determine whether

26  dismissal of the superseding indictment, with prejudice, is warranted.

27  . . .

28  . . .

## XI.    CONCLUSION

Any defendant in any criminal proceeding enjoys some basic constitutional guarantees that he will receive a fair trial and that he will be afforded due process throughout the proceedings.  5th, 6th Am. U.S. Const.  He is also entitled to the effective assistance of counsel throughout the proceedings. 6th Am., U.S. Const.

Those rights were violated in this case by the government's use of "source spreadsheets" containing inaccurate data and by their misuse of that data by portraying it as evidence of fraud when it was not only not fraudulent, it was not relevant to these defendants, in this case.  The prosecutors conduct went unchecked because defense counsel did not retain an expert to review the data the government wanted to use at trial and as a result, they did not understand that the government was misusing the data.  While trial counsel for Dr. Belcher did a very good job at many things in this case and they have certainly assisted in the transition of this case to appellate counsel, they fell short in this regard.  Perhaps their mistake was assuming that the government would not present false evidence to secure a conviction.  But that is what the government did in this case.

At a minimum, this Court must grant a new trial.  The inquiry, however, does not stop there.  A hearing to determine whether the government's conduct warrants dismissal of the indictment with prejudice is also necessary, with discovery limited to that purpose.

Respectfully submitted this 24th day of July, 2018.


*/s/ Lisa A. Rasmussen*

_____
LISA A. RASMUSSEN, ESQ.
Counsel for Gregory Belcher, M.D.

29

1

**CERTIFICATE OF SERVICE**

2

  I HEREBY CERTIFY that I served a copy of the foregoing MOTION FOR NEW

3

TRIAL upon all persons registered to receive service by CM/ECF in the above-entitled case on

4

this 24th day of July, 2018.

5

6

         */s/ Lisa A. Rasmussen*

7

      _____

8

      Lisa A. Rasmussen, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28